JENNY R. TURNER, *Appellee,* V. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellant.*

No. 16,621.

SYLLABUS BY THE COURT.

NEGLIGENCE—*Placing Employee at Work in Dangerous Place— Notice.* Whether a railroad employee who is inexperienced in the work of placing a dead engine on a turntable by means of a pushpole kicked by a live engine on a converging track, and is crushed between 'the two engines while holding the pole in position, should have known and appreciated the dangers of his situation and stepped back so as to avoid the injury, is held under the circumstances of this case to be a question of fact for the jury and not one of law for the court.

Appeal from Cowley district court. Opinion on rehearing, filed June 10, 1911. Reaffirmed. (For original opinion, see 83 Kan. 315.)

*William R. Smith, O. J. Wood, Alfred A. Scott,* and *J. E. Torrance,* for the appellant.

*A. M. Jackson,* and *A. L. Noble,* for the appellee.

The opinion of the court was delivered by

PORTER, J.: Upon the claim that in the former opinion in this case (*Turner v. Railway Co.,* 83 Kan. 315) the defendant's contention with respect to the law as applied to the undisputed facts had not received the attention which the importance of the case seemed to demand, a rehearing was granted.

Turner, a young man twenty-two years of age, was in charge of the turntable and had been at that particular work about three or four days, having been previously employed at the cinder pit. At the time he received the injuries which caused his death he was assisting in placing a dead engine on the turntable by the use of a pushpole and an engine having steam. The two engines were on adjoining tracks which converged toward the turntable, where they came close together.

The pushpole was placed cornerwise from the live to the dead engine and the latter was by this means started or pushed toward the turntable. The live engine at the time of the accident had no air, so that it was necessary to give the pushpole a sudden kick and then stop the live engine by means of ordinary brakes. If the air brakes had been working the dead engine would have been pushed slowly, as it was supposed to have enough steam of its own to continue backward to the turntable. Turner was under the directions of Nix, the foreman, who directed him to assist in placing the pushpole between the engines. After the pole had been placed in position Nix stepped quickly around behind the dead engine and climbed into the cab for the purpose of applying the steam when the engine was started. He testified that before he went around the engine he told Turner to step back. He also testified that he was not sure whether he had done this; and at another part of his testimony stated that he naturally supposed Turner would step back for his own safety. The jury were warranted in finding from the evidence that he gave no such instruction or warning of any kind to Turner. About the time he climbed into the cab the hostler or engineer of the live engine said to him: "Look out, Billy, I have no air and I am going to give her a kick." The jury found that Turner heard this but did not know that it was intended for him. Turner, instead of stepping backward or even standing still, followed up the pole when the live engine started, apparently for the purpose of keeping the pole in position. The sudden kick brought the two engines so closely together that Turner was caught and crushed, receiving injuries from which he soon after died. The contention of the defendant is that Turner was in a position of danger so obvious and apparent to a man of ordinary intelligence that his failure to step back or to remain where he was, without any signal or warning, was such contributory negligence as to bar a recovery,

and that the court should so declare as a matter of law. It is said that the danger being open and obvious no instructions were required, and numerous cases are cited to the effect that it is not the master's duty to warn a servant when the danger is so obvious that he should observe it himself in the exercise of ordinary care. The defendant quotes from section 4063 of volume 4 of the second edition of Thompson's Commentaries on the Law of Negligence, as follows:

"The master is therefore under no duty of warning or instructing a servant as to dangers which are discoverable by the exercise of ordinary care on his part, with such knowledge, experience, and judgment as he actually possesses, or as the master is justified in believing that he possesses."

The evidence shows and the jury found that Turner was inexperienced and therefore may not have appreciated the danger in which he was placed; nor is it clear from the evidence that the master was justified in believing that Turner possessed knowledge, experience or judgment sufficient to warn him of the danger. We are led to this conclusion from the fact that it seems clear from all the evidence that it was never intended by any of the employees that the live engine should move as far as it did or that the two engines should come so close together. It moved five or six feet, and there is some evidence tending to show that the two engines actually came together. It was alleged in the petition, that the absence of air on the live engine was one of the causes of the accident, and the jury so found. Nix testified:

"Ques. In moving dead engines with the pushpole, is the kick always used or is the engine sometimes pushed slowly and the brake used in stopping the live engine? Ans. Sometimes we kick them and sometimes we push them, either way.

"Q. When they are pushed and not kicked, is there any difference in the handling of the pushpole? A. If you push a dead engine right slow often the dead

engine will go a little faster than the live engine and the pole will drop down if it is not held up.

"Q. Then was it customary for the man handling the pushpole in pushing an engine slowly to walk along and keep the pushpole in his hand? A. Yes, sir, hold one end of it."

He also testified:

"Got up in dead engine and intended to keep dead engine moving on turntable, as we had 25 or 30 pounds of steam. While on engine I noticed that the two cabs were coming closer together. I holloed to Mr. Bull to stop live engine."

Then he says he heard Turner call out and knew that he was caught. There is much uncertainty in the evidence as to the exact place in which Turner stood at the time the live engine was started. If the plat used by the defendant in the oral argument, which was not introduced in evidence, is correct, the distance between the two engines where he stood did not exceed twenty-four inches; and it is apparent that a man of ordinary intelligence without any previous experience in railroad matters would know that he was in danger of being crushed by the slightest movement of the engines toward each other. On the other hand, the plat used by the plaintiff in the oral argument indicates that the distance between the two engines where he stood must have been four or five feet. The finding of the jury is not specific upon this point and the evidence is very uncertain. It seems quite clear to us that whether the dangers of his situation were so obvious that a man of ordinary intelligence must have known and appreciated them depends upon all the circumstances and very much upon the distance between the two engines at the place where he stood. If presumptions are to be indulged they would, of course, favor Turner, and the fact that he continued following along holding the pole makes it seem incredible that the space could have been anything like as narrow as is contended by the defendant. Turner must have known that the dead engine had

.steam, that Nix got into the cab for the purpose of applying it and that it was the intention to move the dead engine but a short distance, and may have supposed that he was expected to hold the pole in place. The evidence shows that he was inexperienced at this kind of work and he may not have known or appreciated what would happen by giving the engine a kick with the live engine having no air. It is true that it does not devolve upon the defendant in a case of this kind to prove that the servant comprehended the risk, and that the courts apply the rule that if upon the facts as shown by the evidence a person of ordinary intelligence who was aware of the conditions must have known and appreciated the danger he is held either to have understood and appreciated it or is chargeable with negligence in not doing so. But in order for us to say as a matter of law that Turner was guilty of such contributory negligence as would bar a recovery it must so appear as an unavoidable inference from all the facts in evidence, and if it appear that different minds might arrive at a different conclusion from all the evidence then it is a question for the jury. There was very strong evidence from which the jury might have found that the deceased ought to have known without any instruction or warning being given that unless he stepped back or remained where he was he would be crushed, but we are unable to say that reasonable minds might not differ upon this question. This disposes of the defendant's main contention.

Complaint is made of the instructions. The twelfth instruction and the first paragraph of the fourteenth could not have misled the jury. The case was not tried nor the verdict based upon the theory that the mere placing of the pole between the engines was a dangerous operation, although it was dangerous. The thirteenth instruction is not open to the objection that it implied that some notice was due from Nix to Turner to retire to a place of safety before Turner could be re-

quired to do so by reason of the danger being as obvious to him as it was to Nix. The court instructed the jury that if they found that Turner knew and appreciated the danger he was in, or that it was so obvious that he should have appreciated it, he assumed the risk without regard to any notice or warning from Nix; nor was it necessary for the court to single out and mention Nix's signal to the hostler and the latter's warning that he was about to move the engine. The instructions fairly covered the issues and there was no error in refusing the ones requested. We find no error prejudicial to the defendant in the admission of evidence.

For these reasons the judgment is reaffirmed.